PATILLO v EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES

Docket No. 126992. Submitted August 11, 1992, at Detroit. Decided
      December 28, 1992; approved for publication April 22, 1993, at
      9:15 A.M.

   Dorris Patillo brought an action in the Wayne Circuit Court
   against Equitable Life Assurance Society of the United States
   and Leethel Neal, the manager of Equitable's Detroit office,
   alleging wrongful termination of employment, defamation, and
   tortious interference with an at-will employment contract. The
   court, Charles Kaufman, J., denied the defendants' motion for
   summary disposition and granted the plaintiff's motion to file
   an amended complaint. The defendants appealed by leave
   granted.

   The Court of Appeals held:

   1. The court erred in denying the motion for summary
   disposition with regard to the wrongful termination allegation.
   The employment agreement between the plaintiff and Equita-
   ble Life supports the presumption that the plaintiff's employ-
   ment was at will, because each party had the power to termi-
   nate the agreement by giving thirty days' notice. A record
   could not be developed that would cause reasonable minds to
   differ with regard to whether the plaintiff's employment was at
   will.

   2. Although the plaintiff admitted that he stormed out of
   Neal's office, this does not amount to an admission by the
   plaintiff that he was insubordinate. Therefore, there is no merit
   to the defendants' claim that, because the plaintiff admitted
   that he was insubordinate, summary disposition should have
   been granted with regard to the claim that the defendants
   made defamatory statements suggesting that the plaintiff was
   fired for insubordination.

   3. Neal's allegedly defamatory statements to the plaintiff's

REFERENCES

Am Jur 2d, Interference § 47; Libel and Slander § 271; Master and
   Servant §§ 27-42.
Defamation: loss of employer's qualified privilege to publish employ-
   ee's work record or qualification. 24 ALR4th 144.

fellow agents were not subject to a qualified privilege. An employer's qualified privilege to defame an employee by making statements to other employees whose duties interest them in the subject matter of the defamatory material is not applicable in this case. The plaintiff's fellow agents did not have a duty that would interest them in knowing the reason for his termination.

4. The trial court did not abuse its discretion in allowing the plaintiff to amend his complaint to add factual information, uncovered in depositions made during discovery, that would support his claim of defamation. The plaintiff did not add a new and separate defamation claim, and the defendants did not suffer undue delay or prejudice.

5. A plaintiff may maintain an action for tortious interference with an at-will employment contract. The trial court did not err in denying the defendants' motion for summary disposition of the plaintiff's claim of tortious interference because a record might be developed regarding that claim upon which reasonable minds could differ.

Affirmed in part and reversed in part.

1. MASTER AND SERVANT — EMPLOYMENT AT WILL.

An employment contract providing each party the power to terminate the agreement by giving thirty days' notice supports the presumption that the employment is at will.

2. LIBEL AND SLANDER — MASTER AND SERVANT — QUALIFIED PRIVILEGE.

An employer has a qualified privilege to defame an employee by making statements to other employees whose duties interest them in the subject matter of the defamatory material, such as supervisors, personnel department representatives, or other company officials.

3. TORTS — EMPLOYMENT CONTRACTS — TORTIOUS INTERFERENCE — EMPLOYMENT AT WILL.

An employee at will may bring an action for tortious interference with the contract of employment; an employee has a manifest interest in the freedom of the employer to exercise its judgment without illegal interference or compulsion, and it is the unjustified interference by third persons that is actionable.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Michael L. Pitt*), for the plaintiff.

*Miller, Canfield, Paddock & Stone* (by *Walter B.*

*Connolly, Jr., Jerome R. Watson,* and *John H. Willems*), for the defendants.

Before: Neff, P.J., and Gribbs and Shepherd, JJ.

Per Curiam. Defendants Equitable Life Assurance Society of the United States and Leethel Neal appeal by leave granted from the denial of their motion for summary disposition on February 28, 1990, and from the March 14, 1990, granting of plaintiff's motion to file an amended complaint in this wrongful discharge case. We affirm in part and reverse in part.

Plaintiff began working for Equitable in 1972, as a trainee insurance agent. Plaintiff initially worked under the "12th Edition Agreement," a written contract that provided for compensation, in part, on a salary basis. In 1973, plaintiff became licensed to sell life insurance in the State of Michigan.

On February 1, 1976, plaintiff and Equitable entered into the "14th Edition Agents Agreement" that established plaintiff as an independent contractor paid solely on a commission basis.

Defendants contend that the trial court erred in denying their motion for summary disposition pursuant to MCR 2.116(C)(10) because the employment agreement was terminable at will. We agree.

The parties' employment agreement provided the following regarding termination of employment:

XIII. Terminations.

A. This Agreement shall be terminable forthwith if the Agent shall enter under contract with or into the service of any other insurance company or if the Agent shall fail to comply with any of the provisions or conditions of this Agreement, or if

the Agent shall violate any law in force in the territory in which the Agent is doing business.

B. If this Agreement is terminated by reason of violation of Paragraph X or Subparagraphs A and B of Paragraph XIV, or if after termination of this Agreement the Agent engages in acts or practices proscribed by Paragraph X or Subparagraphs A and B of Paragraph XIV, the Agent shall forfeit all commission interest that he might otherwise have acquired under any agreement with The Equitable.

C. Unless otherwise terminated, this Agreement may be terminated by either party by a notice in writing delivered personally, or mailed to the other party at the last known address, at least thirty days before the date therein fixed for such termination.

Giving the benefit of reasonable doubt to plaintiff, we find that a record could not be developed that would cause reasonable minds to differ regarding whether plaintiff's employment was at will. *Hutchinson v Allegan Co Bd of Road Comm'rs (On Remand)*, 192 Mich App 472, 480; 481 NW2d 807 (1992). Although the 14th Edition Agreement does not expressly state that plaintiff's employment is at will, its provisions clearly support this presumption. Paragraph A of § XIII provides that an agent may be terminated if the agent services another insurance company, if the agent fails to comply with any of the agreement's provisions, or if the agent violates any law in force in the agent's territory. Paragraph B provides that if plaintiff is terminated for certain reasons, he will forfeit all commission interest. Paragraph C provides that "[u]nless otherwise terminated," the agreement may be terminated by either party by notice delivered at least thirty days before termination. Contracts for permanent employment are for an indefinite period of time and are presump-

tively construed to provide employment at will. *Rowe v Montgomery Ward & Co, Inc,* 437 Mich 627, 636; 473 NW2d 268 (1991). Clearly, the language of § XIII of the 14th Edition Agreement supports the presumption that the plaintiff's employment is at will because each party has the power to terminate the agreement by giving thirty days' notice.

Defendants also contend that the trial court erred in failing to grant their motion for summary disposition with regard to the defamation claim because truth is an absolute defense to defamation. Plaintiff's complaint alleged that defendants made defamatory statements suggesting that plaintiff was fired because of insubordination. Defendants argue that plaintiff admitted in a deposition that he was insubordinate. We find defendants' claim to be without merit. Although plaintiff admitted that he stormed out of defendant Neal's office, this does not amount to an admission on plaintiff's behalf that he was insubordinate.

Defendants next claim that even if the statements were defamatory, they were made under a qualified privilege. We disagree. An employer has a qualified privilege to defame an employee by making statements to other employees whose duties interest them in the subject matter. *Gonyea v Motor Parts Federal Credit Union,* 192 Mich App 74, 78-79; 480 NW2d 297 (1991). In *Sias v General Motors Corp,* 372 Mich 542, 548; 127 NW2d 357 (1964), our Supreme Court held that no privilege extended to the defendant corporation when it called in fellow employees to explain the circumstances of the plaintiff's separation. A corporate representative explained to the employees that the plaintiff had been released for misappropriation of company property. The Court found that these men were not supervisors, personnel

department representatives, or company officials, but merely fellow employees in identical work. The Court held that although the company was interested in restoring morale and quieting rumors, the privilege did not extend to the employees.

In the instant case, fellow agents may have had an interest in the corporation's standard of conduct and grounds for termination, but they did not have a duty that would interest them in knowing the reason for plaintiff's termination. In other words, the fellow agents were not supervisors, personnel department representatives, or other company officials. Therefore, the statements made by Neal were not made under a qualified privilege. Defendants could have simply communicated to these agents the company's policy regarding proper conduct and grounds for termination without indicating the reason for plaintiff's release.

Next, defendants contend that the trial court erred in granting plaintiff leave to amend his complaint because the amendment did not relate back to the original complaint and was time-barred. We disagree.

Plaintiff's original complaint alleged defamation against Neal and Equitable, claiming that Neal told other agents that plaintiff was guilty of insubordination, that plaintiff made racial remarks, and that plaintiff sold fraudulent policies. During discovery, plaintiff deposed Pam Bargon, another agent, who stated that District Manager Darryl Patterson made similar remarks to the agents on the same day that Neal allegedly defamed plaintiff. Approximately sixteen months after the original complaint was filed, plaintiff moved for leave to amend his complaint to indicate that he was also defamed by Patterson. Plaintiff's motion was granted.

A court should freely grant leave to amend a complaint when justice so requires. MCR 2.118(A)(2); *Taylor v Detroit,* 182 Mich App 583, 586; 452 NW2d 826 (1989). The rules pertaining to the amendment of pleadings are designed to facilitate amendment except when prejudice to the opposing party would result. Amendment is generally a matter of right rather than grace. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 659; 213 NW2d 134 (1973); *Boje v Wayne Co General Hosp,* 157 Mich App 700, 709; 403 NW2d 203 (1987). Thus, a motion to amend should ordinarily be denied only for particularized reasons. *Fyke,* at 656.

In this case, a review of the record indicates that the trial court did not abuse its discretion when it allowed plaintiff leave to amend his complaint. Plaintiff amended his complaint to add factual information that would more strongly support his claim of defamation. The additional information was uncovered in depositions made during discovery. Plaintiff did not add a new and separate defamation claim. Even if plaintiff had added a second claim of defamation, the cause of action clearly arose from the same occurrence set forth in the original complaint, and, therefore, relates back to the date of the original pleading. MCR 2.118(D); *Durant v Dep't of Ed (On Second Remand),* 186 Mich App 83, 99; 463 NW2d 461 (1990). Plaintiff's employment was terminated on Friday, April 11, 1988. On Monday, April 14, 1988, Neal and Patterson made two separate statements to the remaining insurance agents explaining the reason for plaintiff's termination. Both Neal and Patterson allegedly stated that plaintiff was guilty of insubordination, that plaintiff made racial remarks, and that plaintiff sold fraudulent policies.

Defendants also contend that plaintiff cannot establish defamation against District Manager

Darryl Patterson. However, defendants fail to specifically show in what manner plaintiff's claim is insufficient. Without more, we find defendants' claim to be without merit.

Defendants next claim that the trial court erred in allowing plaintiff to amend his complaint because the amendment caused defendants undue delay and inherent prejudice. We disagree. A review of the record indicates that the trial court did not err in granting plaintiff leave to amend his complaint. Defendants fail to adequately set forth evidence of undue delay and prejudice.

Finally, defendants contend that the trial court erred in denying their motion for summary disposition pursuant to MCR 2.116(C)(10) with regard to the tortious interference claim, because there was no breach of contract and Neal was an agent for Equitable. We disagree.

In the instant case, plaintiff has an at-will employment contract. A plaintiff may maintain an action for tortious interference with an at-will employment contract. *Feaheny v Caldwell*, 175 Mich App 291, 304; 437 NW2d 358 (1989). An employee has a manifest interest in the freedom of the employer to exercise its judgment without illegal interference or compulsion, and it is the unjustified interference by third persons that is actionable. *Id.* at 303. Thus, "the third party must intentionally do an act that is per se wrongful or do a lawful act with malice and that is unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* A "wrongful act per se" is an act that is inherently wrongful or an act that can never be justified under any circumstances. *Prysak v R L Polk Co,* 193 Mich App 1, 12-13; 483 NW2d 629 (1992).

A review of the record indicates that Neal may have been motivated by animosity toward plaintiff

or a personality conflict when he used his authority to recommend that plaintiff's employment be terminated. Plaintiff began working as an insurance agent for Equitable in 1972. In 1983, Neal was transferred to Michigan to manage the Detroit office. Plaintiff alleges that there was a longstanding animosity between Neal and himself. Pamela Bargon testified in a deposition that plaintiff had told her that Neal threatened to fire plaintiff the first day Neal arrived at the Detroit office. At his deposition, Neal characterized the alleged animosity as insubordination on the part of plaintiff. However, Bargon stated that she had never heard plaintiff yell, scream, or act inappropriate at the office. Furthermore, there was no evidence indicating that plaintiff had a history of insubordination, particularly with respect to plaintiff's conduct before Neal's transfer to the Detroit office. Bargon also testified that at an agency meeting Neal said that plaintiff thought he was "better than the rest of us." Bargon elaborated by explaining that Neal was referring to black people when he said "us." Plaintiff testified that another employee, Mr. Slack, informed him that Neal intended to terminate plaintiff, and that he believed that Neal and plaintiff had a personality conflict.

Giving the benefit of reasonable doubt to plaintiff and drawing all inferences in his favor, this Court is persuaded that a record might be developed regarding tortious interference upon which reasonable minds could differ. *Farm Bureau Mutual Ins Co of Michigan v Stark,* 437 Mich 175, 184-185; 468 NW2d 498 (1991); *Dagen v Hastings Mutual Ins Co,* 166 Mich App 225, 229; 420 NW2d 111 (1987).

Affirmed in part and reversed in part.